J-S60024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAMON WALLS | |
| Appellant | No. 2837 EDA 2013 |

Appeal from the PCRA Order September 27, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0711932-2000,
CP-51-CR-0711941-2000, CP-51-CR-0712002-2000,
CP-51-CR-0712012-2000

BEFORE:  BENDER, P.J.E., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                **FILED NOVEMBER 17, 2015**

Damon Walls appeals *pro se* from the trial court's order dismissing his amended petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After careful review, we affirm.

In 2001, Walls was convicted of first-degree murder and related offenses[1]; he is serving a life sentence.  The convictions stem from a two-day shooting spree perpetrated by Walls and his co-defendant, Watts, which resulted in the death of Isa Muhammed and serious injury to five other

---

[1] Walls was also convicted of aggravated assault, possessing an instrument of crime, and criminal conspiracy.  He was sentenced to a consecutive aggregate prison term of 40-80 years on those charges.

victims, including a 12-year-old bystander. The trial court summarized the factual background of the matter as follows:

> Damon Walls was convicted on the above charges based on events that occurred over the two-day period of March 30, 2001 to March 31, 2001. On March 30, 2001, the [appellant] drove a car with co-defendant Edward Watts as a passenger. Using this vehicle, the defendants initiated a car chase involving victims and witnesses, Gary Corbitt, Samuel Jones, Terrance Slappy and Terrance Tucker. While [appellant] Walls drove the car, [co-defendant] Watts shot at the victim's vehicle as the chase ensued. The victim's vehicle crashed and flipped over; some victim sustained gunshot injuries, and subsequently received medical attention.
>
> On the next day, [appellant] Walls drove a vehicle to chase another vehicle containing the decedent, Isa Muhammed[,] as well as victim Kaamil Jones. Both defendants Walls and Watts were in the car, both were in possession of firearms. The decedent exited and ran away from the vehicle, and both defendants followed him on foot while shooting. Isa Muhammed died of gunshot wounds shortly thereafter.

Trial Court Opinion, 9/25/02, at 2. Walls filed a direct appeal; our Court affirmed his judgment of sentence. ***Commonwealth v. Walls***, No. 1137 EDA 2002 (memorandum decision) (filed 6/20/03).[2] On December 2, 2004,

_____

[2] Counsel also filed a petition for remand to our Court while Walls' appeal was pending. In the petition, counsel requested that the Court remand the case for an evidentiary hearing in light of Walls' claims of ineffectiveness. Our Court reviewed the record and determined that a remand was not warranted as Walls' allegations of ineffectiveness were wholly frivolous. ***Walls***, ***supra***, at 3 n.6.; ***see Commonwealth v. Battle***, 879 A.2d 266 (Pa. Super. 2005). However, since our Court's decision in ***Battle***, our Supreme Court has wholly abrogated the ***Battle*** procedure and clarified the process by which a defendant may pursue claims of ineffective assistance of appellate counsel in the context of post-conviction collateral proceedings. ***See Commonwealth v. Jette***, 23 A.3d 1032 (Pa. 2011) (proper response to *pro se* pleading is to refer pleading to counsel and to take no further
*(Footnote Continued Next Page)*

Walls filed the instant PCRA petition; counsel was appointed. Counsel filed a "no merit" letter seeking to withdraw. Walls filed an objection to the "no merit" letter and a motion to proceed *pro se*. The PCRA court sent its Pa.R.Crim.P. 907 notice of intent to dismiss his petition within 20 days. Without ruling on counsel's request to withdraw or Walls' motion to proceed *pro se*, the PCRA court dismissed his petition on September 21, 2005.

Walls filed a *pro se* appeal from that decision, raising 69 issues. Walls filed motions, with the trial court and our Court, seeking the production of transcripts for all of his proceedings. Our Court ordered the PCRA court to provide Walls with the necessary transcripts. On appeal, our Court held that the PCRA court abused its discretion by summarily dismissing Walls' PCRA claims and adopting counsel's "no merit" letter, providing no explanation of the nature and grounds for its legal conclusions. Moreover, our Court

_(Footnote Continued)_ ─────────────────

action on *pro se* pleading unless counsel forwards motion). For purposes of our Court's 2003 decision on direct appeal from Walls' judgment of sentence, **Jette** makes clear that Walls should have chosen either: (1) to file petition to remove counsel, prior to counsel's filing a brief, and proceed *pro se*, or (2) to remain with appellate counsel for the duration of the appeal and wait until PCRA review to assert claims of appellate counsel's ineffectiveness. Moreover, as the Supreme Court noted in **Commonwealth v. Jones**, 58 A.3d 751 (Pa. 2012), even though **Battle** was still good law at the time of the defendant's direct appeal, our Supreme Court concluded in a petition for review that the Court's determinations were not in concert with the **Jette** procedure and remanded the case back to our Court "to examine this matter in light of **Jette**." **Id.** at 752.

admonished the PCRA court for failing to conduct an independent review of the record or of Walls' exceptions to counsel's **Turner**/**Finley**[3] letter. As a result, our Court vacated the order dismissing Walls' PCRA petition and remanded the case for consideration of Walls' motion to proceed *pro se* and to conduct a proper judicial review of the record by the PCRA court to rule upon Walls' petition. **Commonwealth v. Walls**, No. 2958 EDA 2005 (memorandum decision) (filed 10/9/08).

On remand, the PCRA court held a **Grazier** hearing and new counsel, Sondra R. Rodrigues, Esquire, was appointed to represent Walls and file an amended petition on his behalf. In August 2010, Walls filed a motion for change of court-appointed counsel or, in the alternative, waiver of counsel. The court held two hearings, ultimately concluding that Walls was not entitled to new court-appointed counsel and that he could proceed *pro se*. Walls filed an amended PCRA petition and the Commonwealth subsequently filed its motion to dismiss. On August 22, 2013, the court sent its Rule 907 notice of intent to dismiss his petition without a hearing, to which Walls filed objections. On September 27, 2013, the PCRA court dismissed Walls petition. On September 23, 2014, the trial court filed its Pa.R.A.P. 1925(a) opinion. This appeal follows.

On appeal, Walls presents the following issues for our review:

_____

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

- 4 -

1. Whether the PCRA Court committed an abuse of discretion and/or error of law denying Appellant's rights to federal and state due process by summarily dismissing PCRA claims by adopting the Commonwealth's motion to dismiss, and issuing an inadequate notice pursuant to Pa.R.Crim.P. 907(1).

2. Whether the PCRA Court committed an abuse of discretion and/or error of law denying Appellant's rights to federal and state due process by denying Appellant's motion for change of court-appointed counsel.

3. Whether the PCRA Court committed an abuse of discretion and/or error of law denying Appellant's PCRA petition without an evidentiary hearing based on whether Appellant was denied due process of law, all rights secured by the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 9 of our Pennsylvania Constitution by PCRA counsel's ineffectiveness for failing to review the record and file an amended PCRA petition raising trial counsel's ineffectiveness for [:]

[a.] Failing to object to the erroneous alibi instruction;

[b.] Failing to object to prosecutorial misconduct where the prosecutor stated her false motive, and that Appellant was a drug dealer in gang;

[c.] Failing to object to prosecutorial misconduct where the prosecutor stated her personal opinion to Appellant's guilt;

[d.] Failing to interview and present the testimony of eyewitness Roger Baker;

[e.] Failing to impeach witness with prior testimony and motive to implicate Appellant;

[f.] Failing to raise on appeal that the trial court abused its discretion denying Appellant's motion to suppress in-court and out-of-court identification;

[g.] Failing to raise on appeal that the trial court abused its discretion denying Appellant's motions for continuance to present sick alibi witnesses; [and]

[h.] Counsel[']s failure to investigate primary witness background, and obtain his exculpatory medical records.

The standard of review of an order denying a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Johnston***, 42 A.3d 1120, 1126 (Pa. Super. 2012).

Walls first contends that the PCRA court's Rule 907 notice of intent to dismiss his PCRA petition was inadequate and that the PCRA court improperly adopted the Commonwealth's motion to dismiss in summarily dismissing his petition. We disagree.

Rule 907(1) states, in relevant part:

(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, **the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.**

Pa.R.Crim.P. 907(1) (emphasis added).

Instantly, the PCRA court's Rule 907 notice advises Walls that it intends to dismiss his petition, lists several reasons why it intends to dismiss his petition, and informs him that he has 20 days from the date of the notice to respond to the dismissal. ***See*** Notice Pursuant to Pennsylvania Rule of

Criminal Procedure 907, 8/22/13, at 1. Moreover, in accordance with Rule 907(1), the court subsequently filed an order formally dismissing Walls' petition, finding all the issues raised in his petition without merit. Order, 9/27/13.

Consequently, the trial court's notice wholly complies with Rule 907(1). Moreover, there is no mention in any notice or order that the court relied in whole or in part upon the Commonwealth's motion to dismiss in coming to its decision to dismiss Walls' amended PCRA petition. Therefore, we find this claim meritless.[4]

In his next issue, Walls claims the trial court abused its discretion when it denied his motion for change of court-appointed counsel and forced him to waive counsel.

According to Walls, his attorney, Ms. Rodrigues, ineffectively represented him in the collateral attack on his judgment of sentence. Specifically, he claims that she refused to pursue all of the issues he raised in his *pro se* petition, raised issues in his amended petition that were not supported by the record, and has continually refused to correct her errors.

---

[4] We note that the cases cited by Walls to support this claim are inapposite to the instant situation. They are both death penalty cases which invoke Rule 909, not Rule 907. **See Commonwealth v. Simpson**, 66 A.3d 253, 285 (Pa. 2013) (Saylor, J., dissenting) and **Commonwealth v. Rush**, 838 A.2d 651, 658-59 (Pa. 2003).

- 7 -

In **Commonwealth v. Floyd**, 937 A.2d 494 (Pa. Super. 2007), our Court stated that the "right to appointed counsel does not include the right to counsel of the defendant's choice." **Id.** at 497, citing **Commonwealth v. Albrecht**, 720 A.2d 693, 709 (Pa. 1998). Moreover,

> [w]hether to grant a defendant's petition to replace court appointed counsel is a decision which is left to the sound discretion of the trial court. As a general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel.

**Id.**, citing **Commonwealth v. Grazier**, 570 A.2d 1054, 1055 (Pa. Super. 1990) (citations omitted). **See** Pa.R.Crim.P. 122 ("[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reason.").

The trial court originally appointed Richard B. Moore, Esquire, to represent Walls for collateral proceedings. Attorney Moore, however, was permitted to withdraw pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). When our Court reversed the PCRA court's order denying Walls relief and remanded the matter, the trial court appointed Sondra Rodrigues to represent him and file an amended petition on Walls' behalf. Walls became unhappy with the issues raised in the amended petition; consequently, in August 2010, Walls filed a "Motion for Change of Court-Appointed Counsel or Alternative Waiver of Counsel." In response, counsel filed a letter explaining the issues she selected to pursue in Walls'

amended petition and detailing why she had concluded particular issues Walls wished to raise were without merit.

While an indigent petitioner seeking PCRA relief is entitled to the mandatory appointment of counsel, this entitlement may be waived only after addressing his entitlement to appointed counsel with the PCRA court. *See* Pa.R.Crim.P. 904. In order to waive counsel, a defendant's waiver must be knowing, intelligent and voluntary. ***See Grazier***, ***supra*** (when defendant seeks waiver of right to counsel at post-conviction and appellate stages, trial court must conduct on-the-record determination that waiver is knowing, intelligent, and voluntary). Moreover, in such cases a court can appoint standby counsel for a defendant who elects to proceed *pro se*.

On September 23, 2010, and May 26, 2011, the court held hearings to determine whether new counsel should be appointed to replace Walls' current counsel, Attorney Rodrigues, and, if not, whether he should proceed *pro se*. At the first hearing Walls chose to proceed in the absence of counsel's presence. He gave specific examples of why he believed that he was entitled to new counsel. The court essentially determined that Walls' complaints boiled down to a fundamental disagreement with his attorney's strategies. The record is replete with letters between Walls and Attorney Rodrigues supporting this conclusion.

Counsel was diligently and effectively attempting to advocate on behalf of Walls; in counsel's words "he [could not] accept that not everything c[ould] be done exactly when [he] want[ed] it." Letter from Sondra R.

Rodrigues, Esq., 4/17/10. Under such facts, we find that the court properly determined that Walls was not entitled to new counsel. *See Floyd*, *supra* (appointment of new counsel not warranted where defendant merely alleges difference of opinion in trial strategy, defendant lacks confidence in counsel's ability, or defendant alleges strained relationship with counsel); *see also* Pa.R.Crim.P. 122.

Moreover, once the PCRA court made the determination that new counsel would not be appointed, the focus shifted to Walls to determine if he wished to proceed *pro se*. Walls unequivocally told the court that he wished to no longer be represented by Attorney Rodrigues and wanted, instead, to represent himself. N.T. *Grazier* Hearing, 5/26/11, at 10. The court conducted a full colloquy to ensure that Walls was waiving his right to counsel, and that the waiver was being made knowingly, intelligently, and voluntarily. The court's inquiry made Walls aware of both the right to counsel and the risks of forfeiting that right, specifically indicating that many rights and potential claims may be permanently lost if not timely asserted and, that despite *pro se* status, he would still be bound by all normal procedural rules. *Commonwealth v. Meehan*, 628 A.2d 1151, 1157 (Pa. Super. 1993). Accordingly, we find that Walls properly invoked his right to self-representation and that the trial court did not abuse its discretion in permitting him to waive his right to counsel and proceed *pro se*. *See Commonwealth v. Monica*, 597 A.2d 600 (Pa. 1991) (record must show

that accused was offered counsel but intelligently and understandingly rejected offer; anything less is not waiver).

In his final claim on appeal, Walls asserts that the PCRA court abused its discretion by denying his petition without a hearing where he raised PCRA counsel's ineffectiveness for failing to raise, in an amended petition, several meritorious claims of trial counsel's ineffectiveness.

A court may dismiss a PCRA petition without a hearing, and after proper notice is given to the parties, when:

> [T]he judge is satisfied from this review [of the petition] that **there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief**, and no purpose would be served by any further proceedings.

Pa.R.Crim.P. 907(1) (emphasis added). Moreover, with respect to claims of ineffective assistance of counsel, we begin with the presumption that counsel is effective. *Commonwealth v. Spotz*, 47 A.3d 63, 76 (Pa. 2012). To prevail on an ineffectiveness claim, a petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. *Id.* (citation omitted).

<u>Ineffectiveness with regard to Alibi Instruction</u>

Walls complains that the trial court's alibi instruction improperly included his co-defendant, and, as a result, misled the jury. Specifically, he alleges that the instruction made the jury think that it was required to acquit

both defendants if it believed the alibi testimony. Because the alibi testimony did not categorically exclude the possibility that his co-defendant perpetrated the crimes charged, Walls asserts he was prejudiced by the instruction. We disagree.

The trial court's instruction clearly indicated to the jury that each co-defendant's case was to be considered independently. That principle also encompasses consideration of an alibi defense with regard to each co-defendant, Walls and Watts. Additionally, the Commonwealth's cross-examination of the alibi witness, Sheryl Allen, brought out the specific whereabouts of each co-defendant and highlighted the fact that the alibi was more favorable to Walls. Finally, Walls has failed to show that he suffered prejudice as a result of the charge where there was overwhelming evidence of his guilt based upon testimonial evidence as well as eyewitness accounts. *Spotz*, *supra*.

Ineffectiveness for Failing to Review Record/Object to Prosecutor's Remarks

Walls claims that trial counsel was ineffective for not objecting to the prosecutor's misconduct during closing arguments. Specifically, he complains that during the Commonwealth's closing arguments he was improperly referred to as a drug dealer. He contends that this reference undercut his defense and rendered his trial unfair. We disagree.

Upon review of the closing arguments, it is clear that the Commonwealth's reference to drug dealers, while made in passing about the

defendant, was also made with regard to eyewitnesses, Samuel Jones and Gary Corbitt, as well as the victim. The Commonwealth made this reference to debunk the myth that just because eyewitnesses may be an "unsavory bunch" it does not mean they are not credible. N.T. Trial (Jury), 11/1/01, at 143-44. Moreover, as the Commonwealth acknowledged in its Motion to Dismiss, the reference to drug dealing was made in an effort to downplay the defense's drug-gang turf war theory and to emphasize the Commonwealth's theory of motive which focused on revenge-killing.

Walls also claims that counsel was ineffective for failing to object to the prosecutor's prejudicial opinion regarding Walls' guilt. Specifically, in closing arguments the prosecutor stated that Walls was the "judge, jury and executioner of [the victim]." *Id.* at 145.

A prosecutor must limit closing remarks to the facts in evidence and the legitimate inferences that may be drawn therefrom. *Commonwealth v. Anderson*, 415 A.2d 887 (Pa. 1980). Whether improper prosecutorial remarks constitute reversible error depends on whether they are so unavoidably prejudicial as to prevent an unbiased verdict. *Commonwealth v. Gilman*, 401 A.2d 335, 341 (Pa. 1979). The effect depends upon the atmosphere of the trial, and the court has discretion to decide what action should be taken. *Id.* Where the evidence and any legitimate inferences that may be drawn therefrom support the remark, it will be permitted. *Anderson*, *supra* at 888.

Instantly, the prosecutor's remark was made in passing during the course of a lengthy closing argument. Evaluated in context of the entire closing argument, and supplanted by the overwhelming evidence of Walls' guilt, we conclude that the language used by the prosecutor to portray the defendant did not have "the unavoidable effect [of] prejudic[ing] the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict." *Commonwealth v. Spotz*, 896 A.2d 1191 (Pa. 2006) (citation omitted). Therefore, this ineffectiveness claim fails.

Ineffectiveness for Failing to Interview Eyewitness Baker

Walls claims that trial counsel was ineffective for not calling Roger Baker as a trial witness. Walls asserts that the statement Baker gave to police about the instant crime contradicted evidence presented by the Commonwealth showing that Walls was involved in the victim's murder and attempted murder of another victim.

As the Commonwealth points out, any discrepancy between Baker's statement recounting the shooting and those of Commonwealth witnesses incriminating Walls was slight, at best. Moreover, a jury is capable of reconciling any such discrepancy and Walls points to nothing in the record to establish that the verdict would have been different if Baker had been called as a trial witness. *Commonwealth v. Butler*, 647 A.2d 928, 931 (Pa. Super. 1994).

Ineffectiveness for Failing to Impeach Witness's Trial Testimony

Next, Walls claims that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for not impeaching Commonwealth witness, Samuel Jones, with his prior inconsistent statement and bias against Walls. Specifically, Walls asserts that Jones' initial statement to police, which did not identify Walls as the assailant, is inconsistent with his preliminary hearing testimony and trial testimony, in which he admitted he did not identify Walls from a photo array until six days following the shooting.

Walls' argument on this issue is disjointed, contradictory and completely incoherent. Therefore, we decline to review it further. *See Commonwealth v. Delligatti*, 538 A.2d 34, 41 (Pa. Super. 1988) (citing *Commonwealth v. Sanford*, 445 A.2d 149, 150 (Pa. Super. 1982)).

Ineffectiveness for Failing to Challenge on Direct Appeal Denial
of Motion to Suppress Identification Testimony

Walls alleges that counsel was ineffective for failing to challenge the court's denial of his motion to suppress Samuel Jones' in-court and out-of-court identification testimony implicating him in the shooting. Walls claims that the photo array procedure was suggestive where the detectives coerced Jones' identification of Walls. Consequently, Walls concludes that, without an independent basis, this procedure led to a tainted identification of him as the perpetrator.

An in-court identification may be admissible despite the inadmissibility of a pre-trial identification where the in-court identification is not tainted by the prior identification. *Commonwealth v. Wade*, 33 A.3d 108 (Pa. Super.

- 15 -

2011) (citing **Commonwealth v. Baker**, 614 A.2d 663 (Pa. 1992)). "In gauging reliability, we employ a totality of circumstances test." **Wade**, 33 A.3d at 114.

The police officers who conducted the photo array consistently testified that Jones wrote the name "Damon" on the bottom of the photo of Walls *after* he identified him as his assailant and *after* the officers asked him to sign his name on the bottom of the picture. This testimony directly contradicts Walls' claim that the officers coerced Jones into identifying Walls. Moreover, Jones had ample opportunity to view Walls through the untinted windshield as it drove by him twice before a car chase ensued. Accordingly, the jury was free to believe the testimony of the officers with regard to the non-suggestive nature of the photo array and also credit Jones' in-court identification of Walls. **Wade**, **supra**. Accordingly, we find no merit to this claim.

<u>Ineffectiveness for Failing to Challenge on Direct Appeal Denial of Motion for Continuance</u>

Walls next asserts that counsel was ineffective for failing to challenge the trial court's denial of his request for a continuance on the basis that material witnesses, Cheryl Allen and Rebecca Earp, were ill. Specifically, Walls claims that the court never asked the reason for the continuance request or inquired as to what the substance of the witnesses' testimony would have been, and also incorrectly determined that Walls had waived the continuance issue with regard to Earp.

We first note that Sheryl Allen, Cheryl Allen's daughter, did in fact testify as an alibi witness at Walls' trial. Walls has failed to produce any evidence to support the fact that Sheryl Allen's mother's testimony would have been anything other than cumulative of her daughter's. Walls also fails to explain in his brief how the testimony of Earp, who is the sister of Sheryl Allen and daughter of Cheryl Allen, would have "completed his defense," other than the mere fact that they are related to each other. Without more to substantiate his claim, we find no merit to this issue. ***See Commonwealth v. Howard***, 353 A.2d 438 (Pa. 1976) (trial court's decision to grant or refuse continuance is based on whether witness is essential to defense or necessary to strengthen defendant's case, diligence exercised to procure presence of witness at trial, facts to which witness could testify, and likelihood that witness could be produced at next term of court). Moreover, a span of 16 days elapsed between the filing of Walls' continuance motion and the commencement of the defense's case. Again, Walls does not explain how the witnesses were still unavailable at that time. Therefore, we cannot find that counsel was ineffective for failing to challenge the trial court's decision where it was not an abuse of discretion to denying the continuance request.

Ineffectiveness for Failing to Investigate Commonwealth Witness's Background and Obtain Medical Records

Finally, Walls claims that counsel was ineffective for failing to investigate the background of Samuel Jones and obtain his "exculpatory"

medical records which would have been used to impeach his credibility as the Commonwealth's chief witness in the case.

In **Commonwealth v. Polk**, 500 A.2d 825 (Pa. Super. 1985), this court set forth the standard for determining the ineffectiveness of counsel for the failure to investigate witnesses. In order to prevail, the appellant must demonstrate: (1) the identity and existence of the witnesses; (2) that counsel knew of the witnesses; (3) the material evidence that the witnesses would have provided; and (4) the manner in which the witnesses would have been helpful to appellant's case. **Id.** at 829. **See also Commonwealth v. Gillespie**, 620 A.2d 1143 (Pa. Super. 1993); **Commonwealth v. Petras**, 534 A.2d 483 (Pa. Super. 1987).

Walls contends that without Jones' testimony the Commonwealth would not have been able to charge him with the stated crimes. Specifically, Jones' medical records from Temple University Hospital, where he was taken following the shooting, indicate that he told medical personnel that he was shot in the back while sitting in the backseat of a car. At trial, however, Jones testified that he was driving the vehicle while he was shot.

While Jones' statement to hospital personnel regarding where he was sitting in the car at the time he was shot contradicts his trial testimony, it does not make his entire version of events impossible. Moreover, several other witnesses, who were actual passengers in Jones' car on the night in question, corroborated Jones' trial testimony with regard to where he was standing in the street when Walls and Watts first passed him and the fact

that Jones could see the perpetrators through the untinted front windshield of their car. Given the limited impeachment potential of Jones' statement, coupled with the extensive cross-examination that defense counsel conducted on Jones, we find that Walls has failed to show prejudice. Therefore, he must fail in his ineffectiveness claim. ***Spotz***, 47 A.3d at 76 (to prevail on ineffectiveness claim, petitioner must plead and prove, by a preponderance of the evidence, three elements: (1) underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) petitioner suffered prejudice because of counsel's action or inaction.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/17/2015</u>